UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. DWAYNE GILMORE,<br><br>Plaintiff,<br><br>v.<br><br>C SILVA, et al.,<br><br>Defendants. | Case No. 19-cv-02689-JSW<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 49, 50 |

## INTRODUCTION

Now before the Court are the cross-motions for summary judgment filed by Plaintiff, C. Dwayne Gilmore ("Plaintiff"), and Defendants C. Silva, G. Abdullah, R. Losacco, C.E. Ducart, R. Tupy, and the Director of the California Department of Corrections and Rehabilitation ("CDCR") (together, "Defendants"). The Court has considered the parties' papers, the administrative record, and legal authority. For the reasons set forth herein, the Court HEREBY DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' cross-motion for summary judgment.

## BACKGROUND

**A.     Procedural Background**

Plaintiff was at all relevant times a prisoner at Pelican Bay State Prison ("PBSP"). He filed the instant action on or after May 7, 2019. *See* Docket No. 1 ("Complaint") at 11 (stating that the Complaint was executed by Plaintiff on May 7, 2019); *see also Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (applying the mailbox rule to prisoner's § 1983 complaint) (relying on *Houston v. Lack*, 487 U.S. 266 (1988)).

The Court screened the Complaint pursuant to 28 U.S.C. § 1915A, noted that Plaintiff complained of events which occurred between November 2014 and March 2015, explained that

the applicable statute of limitations is four years, and dismissed the Complaint as time-barred. *See* Docket No. 8. On appeal, the Ninth Circuit reversed because the statute of limitations may have been tolled by Plaintiff's efforts to exhaust his administrative remedies. *See* Docket No. 15.

On remand, the Court ordered Defendants to respond to the Complaint. *See* Docket No. 18. Defendants moved for summary judgment, *see* Docket No. 49 ("Defendants' summary judgment motion" or "Defendants' MSJ"), Plaintiff filed an opposition, *see* Docket No. 56 ("Plaintiff's Opposition"), and Defendants filed a reply, *see* Docket No. 62 ("Defendants' Reply). In addition, Plaintiff filed a cross-motion for summary judgment, *see* Docket No. 5 ("Plaintiff's summary judgment motion" or "Plaintiff's MSJ"), Defendants filed an opposition, *see* Docket No. 62, and Plaintiff filed a reply, *see* Docket No. 63 ("Plaintiff's Reply").

**B.      Factual Background**

Unless noted otherwise, the following facts are undisputed.

Plaintiff alleges that for three months in 2014 and 2015, his job assignment prevented him from attending Friday prayer services, called Jumu'ah. *See generally*, Compl.

Defendants explain that PBSP inmates' movements are tightly regulated and monitored.[1] *See* Defs.' MSJ at 2. Inmates are required to remain at their assigned programming, and must have a "ducat" in order to leave it. *See id*. Staff, including clergy, formerly were able to issue ducats in physical form. *See id*. at 2-3. However, multiple inmates abused this system. Specifically, inmates were known to request a ducat to attend religious services, then instead go to another location and engage in violence. *See id*. at 3. To prevent this abuse, PBSP enacted a rule by which staff could issue ducats only through the electronic Strategic Offender Management System ("SOMS"). *See id*. at 2-3.

As PBSP transitioned from paper ducats to SOMS, SOMS contained a technical problem under which "staff could not [issue] electronic ducats for religious services if the inmate was also

---

[1] As the Ninth Circuit has observed, PBSP is "a maximum security prison," *Freitag v. Ayers*, 468 F.3d 528, 533 (9th Cir. 2006), which in the past has been "racked with intense prison violence," *Ramirez v. Reagan*, 82 F.3d 423 (9th Cir. 1996). *See also Clement v. California Dep't of Corr.*, 364 F.3d 1148, 1153 (9th Cir. 2004) ("It is well known that Pelican Bay houses maximum-security prisoners under the most restrictive conditions of any California prison.").

assigned to a job that day." *Id*. at 3.  Because Plaintiff was assigned to work as a barber on Fridays, staff did not have the technical ability to issue him a ducat which would allow him to skip work and attend Jumu'ah instead.  *See id*.  This problem eventually was fixed.  *See id*.

Beginning November 22, 2014, Plaintiff was assigned to work as a barber on Tuesdays through Saturdays.  *See id*.  Plaintiff's morning shift ran from 7:00 a.m. to 11:00 a.m., and his afternoon shift ran from 1:30 p.m. to 4:00 p.m.  *See* Pl.'s MSJ at 2.  During the break between his two shifts, Plaintiff was required to be in his cell.  *See id*.

On November 28, 2014, Plaintiff's job assignment conflicted with scheduled Jumu'ah services.  *See id*. Defs.' MSJ at 3-4.  Due to the SOMS technical problem, staff was unable to issue Plaintiff a ducat to allow him to attend Jumu'ah services rather than his job.  *See id*. at 4.

Plaintiff waited two weeks to submit a request for interview regarding his Jumu'ah services attendance.[2]  *See* Docket No. 49-4 ("Silva Declaration, Exhibit A") at 2 (showing that the request was submitted December 14, 2014).  In the response to Plaintiff's request for interview, Defendant Community Resource Manager Losacco explained that SOMS prevented staff from issuing a ducat which would allow Plaintiff to skip work to attend Jumu'ah services, and noted that "the least restrictive alternative is in[-]cell prayer or meditation."  *Id*.

On January 16, 2015, four days after officials responded to the request for interview, Plaintiff filed a grievance regarding his inability to attend Jumu'ah services.[3]  *See* Docket No. 49-2 ("Losacco Declaration, Exhibit A") at 4.  Among other forms of relief, he requested the ability to "attend [his] Friday services at 12:30 noon to the conclusion of [his] Friday services at approximately 2:20 p.m."  *Id*. at 4, 6.  Plaintiff's grievance was addressed on February 12, 2015 at the first level of review by Defendants Chaplain Abdullah and Community Resource Manager Losacco.  *See id*. at 10-11.  These Defendants reiterated that as a technical matter SOMS did not allow for Plaintiff's work assignment to be overridden with a ducat allowing him to attend Jumu'ah, and that the least restrictive alternative was in-cell prayer or meditation.  *See id*.

---

[2] The Court notes that two Fridays, December 5, 2014, and December 12, 2014, fell within Plaintiff's period of delay.
[3] The Court notes that one Friday, January 16, 2015, fell within Plaintiff's period of delay.

3

On February 17, 2015, Plaintiff appealed to the second level of review.[4] *See id*. at 5. He argued that "[t]he least restrictive means" of addressing his concerns was to "allow [him] to attend [his] Friday services because [he] [did] not work at the time of [his] services." *Id*.

After receiving Plaintiff's appeal to the second level of review, Defendants began working on a job adjustment for Plaintiff that would allow him to attend Jumu'ah services. *See* MSJ at 4; *see also* Docket No. 49-1 ("Losacco Declaration") at ¶¶ 11-12. Doing so required Plaintiff both to obtain a job change chrono and to be placed on a waiting list for a determination by PBSP's Classification Committee. *See id*. at 3; *see also* Docket No. 49-3 ("Silva Declaration") at ¶¶ 2-3. "By February 27, 2015, Plaintiff's work schedule had been adjusted and he was able to regularly attend Jumu'ah services." Losacco Decl. ¶ 12.

On July 1, 2015, Plaintiff received a response at the second level of review. *See* Losacco Decl., Ex. A at 12, 14. In that response, Defendant Warden Ducart noted that Plaintiff "ha[d] been ducated for religious services and [was] currently attending Friday services." *Id*. at 12.

Plaintiff subsequently appealed to the third level, and argued that the second-level response failed to "address the fact that [he] was denied seven [] weeks of [his] Friday services as a result of the SOMS ducat program . . . ."[5] *Id*. at 8. Plaintiff's appeal to the third level of review was denied because his concerns adequately had been addressed at the second level of review. *See id*. at 3.

## DISCUSSION

**A.     Legal Standard**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

---

[4] The Court notes that one Friday, February 13, 2015, fell within Plaintiff's period of delay.
[5] The Court notes that the representation in Plaintiff's appeal, that Plaintiff missed seven Jumu'ah services, conflicts with the representation in Plaintiff's summary judgment motion, that Plaintiff missed a total of nine Jumu'ah services. *Compare* Losacco Decl., Ex. A at 8 *with* Pl.'s MSJ at 4.

4

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

The nonmoving party must provide facts to support his arguments, or point to specific place in the record where facts may be found, to carry his burden. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) ("Judges are not like pigs, hunting for truffles buried in briefs.") (internal citation and quotation marks omitted); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (internal citation and quotation marks omitted); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact.").

**B.    Analysis**

Defendants argue that Plaintiff's First Amendment claim fails on the merits and that his RLUIPA claims are moot. *See generally*, Defs. MSJ. Plaintiff argues he should be granted summary judgment because Defendants' "reasoning for the denial" of "Plaintiff's request for reasonable accommodations" "is too remote for [D]efendants to establish a 'valid, rational connection'" to a legitimate government interest. Pl.'s MSJ at 16. He further argues that Defendants are not entitled to qualified immunity. *See id*. at 10.

The Court agrees with Defendants that Plaintiff's First Amendment claim fails on the merits and that Plaintiff's RLUIPA claims are moot. Because these conclusions are dispositive of this entire action, the Court need not consider Defendants' other arguments regarding qualified immunity, official capacity, and personal involvement. *See generally,* Defs.' MSJ.

### 1. Free Exercise Clause claim

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend I. "The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

Under the Free Exercise Clause, inmates must be given "reasonable o[p]portunities . . . to exercise the religious freedom guaranteed by the First . . . Amendment," including attending religious services. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (considering a claim that prison officials had entirely prohibited Buddhist services). Prisoners' free exercise right, however, necessarily is limited "both from the fact of incarceration and from valid penological objectives— including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). In order to establish a free exercise violation, an inmate must show a defendant burdened the practice of his religion without any justification reasonably related to legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). This is because "'[w]hen a prison regulation impinges on'" any of an inmate's constitutional rights, "'the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id*. at 884 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987).

The Supreme Court has identified four factors for Courts to consider when determining whether a regulation or practice is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives," or, in other words, whether the rule at issue is an "'exaggerated response' to prison concerns." *Turner v. Safley*, 482 U.S. 78, 89-

90 (1987).[6]  The task in considering the *Turner* factors is not to balance the four factors, but, rather, to determine whether the state shows a "reasonable" relation between the policy and legitimate penological objectives, rather than simply a "logical" one.  *Beard v. Banks*, 548 U.S. 521, 533 (2006).  While all justifiable inferences must be drawn in the prisoner-plaintiff's favor with respect to matters of disputed fact, the Court's inferences must accord deference to the views of prison authorities in disputed matters of professional judgment.  *See id.* at 529-30.

Both the United States Supreme Court and the United States Court of Appeals for the Ninth Circuit have rejected free exercise claims under circumstances similar to those here.

In *O'Lone,* the Supreme Court upheld a prison regulation that precluded prisoners from returning mid-day for Jumu'ah prayer services, where those prisoners were part of a work-gang detailed on assignments outside of the prison.  *See* 482 U.S. at 349.  The Supreme Court found that although there were no alternative means for the prisoners to attend Jumu'ah services, the prisoners nevertheless retained their ability to participate in other Muslim religious ceremonies and practices, and that such ability supported the reasonableness of the restriction.  *Id.* at 352–53. The Supreme Court also noted that the prison's regulation "was justified by concerns of institutional order and security," which is a "legitimate concern."  *Id*. at 350-51.

In *Sutton v. Vail*, the Ninth Circuit rejected a claim where the prisoner-plaintiff was not given the opportunity to attend services, because he was able otherwise to practice his religion.  The prisoner-plaintiff in that case claimed that he had been "forbid[en]. . . from participating in group/community prayer" and "prohibit[ed] . . . from attending Jewish ritual worship/weekly Sabbath services, and any/all Jewish Festival/Holiday Services."  *Sutton v. Vail*, No. CV-11-5023-JLQ, 2011 WL 13196530, at *1 (E.D. Wash. June 6, 2011), *aff'd,* No. 11-35513, 2012 WL 5951464 (9th Cir. Nov. 27, 2012).  Prison officials explained that no sponsor was available to lead services, and advised the prisoner-plaintiff to pursue his faith "individually" and "in a solitary fashion."  *Id*. at *2.  Although the prisoner-plaintiff was unable to attend services and instead had to perform his worship in a "solitary fashion," the Ninth Circuit concluded that the prisoner-

---

[6] The *Turner* test applies to constitutional claims, but not to Plaintiff's RLUIPA claim.  *See Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir. 2008).

7

plaintiff had not shown "that defendants' actions substantially burdened his ability to practice his religion." No. 11-35513, 2012 WL 5951464, at *1 (9th Cir. Nov. 27, 2012).

Here, even though Plaintiff alleges that he could not attend Jumu'ah services during the time period at issue, it is not disputed he retained the ability to pray in his cell and to practice other aspects of his religion. It also is undisputed that PBSP adopted its ducat regulations to promote inmates' safety and institutional security. *See supra*. Under *O'Lone* and *Sutton*, this these undisputed facts are fatal to Plaintiff's free exercise claim. *See Parnell v. Tucker*, No. C 06-7662 SBA (PR), 2010 WL 11545427, at *11 (N.D. Cal. Mar. 31, 2010) (finding that *O'Lone* was fatal to the prisoner-plaintiff's attempt to state a free exercise claim, where the prisoner-plaintiff was able to pray individually), *aff'd,* 458 F. App'x 581 (9th Cir. 2011); *see also Thomas v. Saafir*, No. C 06-0184 MMC (PR), 2007 WL 9724372, at *6 (N.D. Cal. Sept. 28, 2007) (same), *aff'd on other grounds,* 327 F. App'x 733 (9th Cir. 2009).

Plaintiff attempts to distinguish *O'Lone* on the basis that he worked inside the prison, while the *O'Lone* prisoner-plaintiffs needed to return from outside work details in order to attend Jumu'ah services. *See* Pl.'s Opp. at 8. Plaintiff's arguments are unpersuasive. As in *O'Lone*, PBSP determined that a certain approach to controlling inmates' movement was necessary for institutional security. As in *O'Lone*, PBSP's explanation of that approach is rational and reasonably related to security needs. As in *O'Lone*, although this approach had the side effect of preventing Plaintiff from attending Jumu'ah services for a short period, Plaintiff was otherwise able to practice his religion. These similarities are enough for *O'Lone* to control here.

Applying Supreme Court and Ninth Circuit precedent, Plaintiff's free exercise claim fails. Defendants are entitled to judgment in their favor.

### 2. RLUIPA claim

Defendants argue that Plaintiff's RLUIPA claim fails because RLUIPA would entitle Plaintiff only to injunctive relief, which is now moot. *See* Defs.' MSJ at 11. Plaintiff argues that his RLUIPA claim is not moot because technical problems could someday prevent Plaintiff from attending Jumu'ah services again. *See* Pl.'s Opp. at 18-19.

Plaintiff's concern is too speculative to warrant injunctive relief. It is undisputed that the technical issue which temporarily prevented Plaintiff from attending Jumu'ah services has been resolved, and that PBSP arranged for Plaintiff to attend Jumu'ah services by March 2015. *See supra*. Moreover, Plaintiff left PBSP six years ago. *See* FAC ¶ 3. He now is incarcerated at Centinela State Prison ("CEN"), *see* Pl.'s Opp. at 19, which lies in the Southern District of California, *see* 28 U.S.C. § 84(d). Any injunction as to PBSP employees would be moot because Plaintiff is no longer in their custody. Any injunction which actually could affect Plaintiff would have to be issued as to CEN employees, who reside beyond this Court's jurisdiction.

Accordingly, Plaintiff is not entitled to injunctive relief, and his RLUIPA claim fails.

### 3. Other claims

Plaintiff sought to proceed against officials in their official capacities, and against CDCR officials as well as PBSP officials. *See generally*, FAC. Defendants raised procedural arguments against these claims. *See* Defs.' MSJ at 11-12. Because the Court has already rejected Plaintiff's free exercise and RLUIPA claims for the reasons discussed above, it need not examine these arguments. The Court merely notes for the sake of clarity that Plaintiff's official-capacity claims and claims against CDCR officials fail along with his free exercise and RLUIPA claims.

### CONCLUSION

Defendants' motion for summary judgment is **GRANTED**.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: January 26, 2023

JEFFREY S. WHITE
United States District Judge